*236 OPINION.
Leech :
The Revenue Act of 1928 is controlling.
The question presented is whether the partnership, which consisted of petitioners, was entitled to any deduction from gross income in the computation of its income for 1929 then distributable and taxable to petitioners (sec. 182 (a)),[1] by reason of the transfer of 2,000 shares of E. L. Dana Livestock Co. common stock to the Ann Arbor Group.
Both petitioners and respondent take the position that this transfer was an isolated transaction and is to be so treated here. The petitioners then argue it constituted a deductible expense, or loss. They cite George M. Wright, 18 B. T. A. 471; Selene Baldwin Burdick, Executrix, 20 B. T. A. 742; City Builders Finance Co., 21 B. T. A. 800; Stephen M. Clement, 30 B. T. A. 757; Commissioner v. Wright, 47 Fed. (2d) 871; Peabody Coal Co. v. United States, 8 Fed. Supp. 845. Respondent answers that the transfer was neither, but was a capital expenditure and therefore not deductible. Our jurisdiction is not limited to the soundness of respondent’s reasons for his action, but necessarily includes the correctness of that action upon any proper theory. Gowran v. Commissioner. 87 Fed. (2d) 125, and cases cited therein.
We do not think this stock transfer was isolated and thus susceptible of such separate and simple treatment.
This stock was transferred to the Ann Arbor Group by petitioners—not by virtue of an independent contract, but in carrying out the specific terms of the very agreement which gave rise to the E. L. Dana Livestock Co. The various steps taken in fulfilling that contract must be viewed as a whole. Hazeltine Corporation v. Commissioner, 89 Fed. (2d) 513, and cases cited therein. And, when so considered, the entire transaction constituted an exchange of certain property of petitioners and the Ann Arbor Group, for stock, bonds and short term notes of that newly organized corporation.
*237 It is true the parties have stipulated that:
The total value of the property thus sold and delivered was $1,642,839.67 and the liens and encumbrances against said property assumed by said corporation were in the sum of $661,191.31, and the net value of the property sold and conveyed to the said corporation, and the cost or basis thereof to said co-partners, was $981,648.36, and which properties of said net value petitioner and his co-partner sold and delivered for 9698 shares of the capital stock of said corporation and which capital stock cost the petitioner and his co-partner $101.22 per share in property and was by said co-partnership parted with as herein set forth.
Likewise, they have stipulated that the partnership offered to sell all the property used in the business of the partnership to the E. L. Dana Livestock Co., for 9,698 shares of the capital stock of that company, and other considerations, as set out in the purported offer in the findings of fact, and that this offer was accepted. But this Board is not bound to accept a stipulation of fact as such where the record demonstrates its error. Seatree v. Commissioner, 72 Fed. (2d) 67, affirming 25 B. T. A. 396.
Thus, it is also stipulated that the single contract providing for the creation of the corporation, the acceptance of corporate bonds and short term notes by the Ann Arbor Group for the amounts due them from petitioners under the earlier trust agreement, and petitioners’ transfer of their property to the corporation for stock, also provided that the partnership should transfer the disputed stock to the Ann Arbor Group. That stock was undoubtedly given to that group as an additional inducement and consideration to them for what was in effect a purchase of obligations of the new company. In addition, it effectuated one of petitioners’ purposes stated in their proposal to the Ann Arbor Group, which, with its acceptance, constituted the contract between that group and petitioners in the execution of the terms of which the corporation was formed. That purpose was that the Ann Arbor Group should continue to share in the “profits” of petitioners’ cattle business.
The substance of all these essentially connected steps in the execution of the petitioners’ contract with the Ann Arbor Group was that petitioners exchanged their equity in the ranch property, together with certain personal property, for 7,698 shares of stock in the newly organized E. L. Dana Livestock Co. Simultaneously, having released their claims against and equity in the partnership property upon their constructive payment, the Ann Arbor Group, in effect, exchanged their money, in the amount of those obligations, for bonds, short term notes and 2,000 shares of stock in that company. See Halliburton v. Commissioner, 78 Fed. (2d) 265; Claude Neon Lights, Inc., 35 B. T. A. 424. Whether this concurrent exchange by petitioners and the Ann Arbor Group with the company was one in *238 which, gain or loss to petitioners was recognizable, is controlled by section 112 (a) and the last provision of (b) (5).[2]
The Ann Arbor Group received all the bonds and notes of the corporation. They constructively exchanged $455,000 cash for those bonds, notes, and stock having a total fair market value of $657,440. It is immaterial that the Ann Arbor Group received their stock in the corporation, not directly therefrom, but through petitioner E. L. Dana, who was so obligated by the contract. Hazeltine Corporation v. Commissioner, supra.
The petitioners’ partnership exchanged property with a fair market value of $981,648.36, for stock then worth $779,191.56. Thus, “the amount of the stock and securities received by each is [not] substantially in proportion to his interest in the property prior to the exchange.” United Carbon v. Commissioner, 90 Fed. (2d) 43.
It follows that the partnership sustained a deductible loss in the amount of the difference between the cost of the property exchanged and that of the stock received therefor. Revenue Act of 1928, secs. Ill (a) and (c)[3] and 113 (a).[4] Since this sum exceeds the contested deficiencies, none such exist. The disputed ad valorem, penalties fall with the deficiencies. Samuel L. Huntington, 35 B. T. A. 835.
Reviewed by the Board.

Decision will be entered for the petitioners.

 SEC. 182. TAX OF PARTNERS.
(a) General rule.—There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. If the taxable year of a partner is different from that of the partner, ship, the amount so included shall be based upon the income of the partnership for any taxable year of the partnership ending within his taxable year.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
(a) General rule.—upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.
(b) Exchanges solely in land.—
[[Image here]]
(6) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.-—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

 SEC. 111. DETERMINATION OF AMOUNT OR GAIN OR LOSS.
(a) Computation of gain or loss.—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized.
(c) Amount realized.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

 SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.
(a) Property acquired- after February 28, 1913.—The basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property * * *.